UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MAPLEWOOD AT UPPER EAST SIDE, LLC,    :
                                                                                            :    Case No. 1:17-cv-02914-DAB
                  - against –    :
:
MALA SENDYK, AS ADMINISTRATOR OF THE    :
ESTATE OF BENJAMIN SENDYK, SHARON    :
SENDYK, AS ADMINISTRATOR OF THE    :    **FIRST AMENDED COMPLAINT**
ESTATE OF BENJAMIN SENDYK, CHICAGO    :
TITLE INSURANCE COMPANY, as escrow    :
agent/stakeholder, INTERIORS BY B&H, INC., and  :
1808 2nd Realty LLC,    :
:
                    Defendants.    :
                                                                        x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Maplewood at Upper East Side, LLC ("**Maplewood**"), by its attorneys, complains against the defendants Mala Sendyk, as Administrator of the Estate of Benjamin Sendyk ("**Mala**"), Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk (collectively with Mala, the "**Estate**"), Chicago Title Insurance Company ("**Chicago Title**"), in its capacity as Escrow Agent/Stakeholder, 1808 2nd Realty LLC ("**1808 Realty**"), and Interiors by B&H Inc. ("**B&H**") and makes the following allegations:

## INTRODUCTION

        1.     This is an action for breach of contract and for declaratory relief. Pursuant to a tax contribution agreement entered into between the Estate, B&H, 1808 Realty and Maplewood, Maplewood agreed to pay a portion of the income tax associated with the sale by the Estate of certain real property in New York, New York in the event that any taxing authority asserts that additional income taxes are due for certain reasons enumerated in the agreement. Maplewood deposited Four Million Dollars ($4,000,000) in escrow which could be drawn on in

the event that the $2,500,000 contributed by the Estate into escrow was insufficient to pay for such additional tax. Since the Estate materially breached the tax contribution agreement, pursuant to the express terms of the agreement, Maplewood is entitled to the return of its $4,000,000 deposit and a declaration that the agreement is terminated and that Maplewood has no further obligations under the agreement.

## **THE PARTIES**

2. At all times relevant herein, Maplewood was and is a Connecticut limited liability company organized and existing under the laws of the State of Connecticut, maintaining an office and doing business at One Gorham Island, Westport, Connecticut 06880. Maplewood's sole member is Gregory D. Smith, a Connecticut resident.

3. Mala Sendyk is the Administrator of the Estate of Benjamin Sendyk. Upon information and belief, Mala Sendyk resides at 2804 Avenue Z, Brooklyn, New York 11235.

4. Upon information and belief, Sharon Sendyk is the successor Administrator of the Estate of Benjamin Sendyk. Upon information and belief, Sharon Sendyk resides at 9 Van Arsdale Court, East Brunswick, New Jersey 08816.

5. Chicago Title Insurance Company is a corporation incorporated under the laws of Florida, which, upon information and belief, has a principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

6. Upon information and belief, B&H is a New York corporation with a principal place of business at 80 Cutter Mill Road, Great Neck, New York 11021.

7. Upon information and belief, 1808 Realty is a New York limited liability company organized and existing under the laws of the State of New York, maintaining an office and doing business at 111 Broadway, Suite 1202, New York, New York 10006. 1808 Realty has

two members, 93-94 Second Development LLC and Second Avenue Member LLC, both of which are New York limited liability companies.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.

9. Venue is proper in this District under 28 U.S.C. § 1391 in that the claims herein arose in this District, as reflected by the location of the real property at issue and the parties' agreement to resolve disputes related to the subject tax contribution agreement in the state and federal courts located in New York County, State of New York. In paragraph 8 of the tax contribution agreement, each of the parties agreed that "any suit, action or proceeding, at law or in equity, arising out of or relating to th[e] Agreement shall be filed only in state or federal court located in New York County, State of New York, and irrevocably and unconditionally consents and submits to the exclusive jurisdiction of such courts over any suit, action or proceeding arising out of or relating to this Agreement. Each party hereto waives any defense to such jurisdiction and venue."

## FACTS

10. Pursuant to a Purchase and Sale Agreement dated as of June 11, 2015 ("**PSA**") by and among the Estate, as seller, and 1808 Realty, as buyer, the Estate agreed to sell the property known as 1808 Second Avenue, New York, New York (the "**Premises**"), to 1808 Realty.

11. Pursuant to an Assignment and Assumption of Purchase and Sale Agreement dated June 10, 2015, Maplewood assumed 1808 Realty's right, title, interest and obligations under the PSA subject to the terms and provisions of the Assignment Agreement.

12. Upon information and belief, B&H acquired the Premises in 1969.

13. Upon information and belief, in 1974, B&H was administratively dissolved, as a result of which the assets of B&H were deemed to have been distributed to (or were held in trust for distribution to) Benjamin Sendyk, the sole shareholder of B&H at the time B&H was administratively dissolved.

14. Upon information and belief, Benjamin Sendyk died in 2011.

15. Upon information and belief, as a result of Benjamin Sendyk's death all of the assets of Benjamin Sendyk were held by the Estate as of July 24, 2015.

16. Upon information and belief, B&H conveyed the Premises to the Estate.

17. Upon information and belief, as a result of the conveyance of the Premises to 1808 Realty or its assignee (including Maplewood), the Estate and/or B&H is expected to recognize a gain, which gain would be subject to tax liability.

**The Contribution and Escrow Agreements**

18. The Estate, 1808 Realty, B&H and Maplewood entered into a Tax Contribution Agreement made as of July 24, 2015 (the "**Contribution Agreement**"). A copy of the Contribution Agreement is attached hereto as <u>Exhibit 1</u> (without exhibits) and incorporated herein by reference.

19. B&H signed the Contribution Agreement through the same attorney in-fact as the Estate.

20. The Contribution Agreement defines Maplewood and 1808 Realty as Contributors, and each individually a Contributor.

21. The Contribution Agreement defines the Estate and B&H as Taxpayers and each individually a Taxpayer.

22. Pursuant to the Contribution Agreement, Maplewood and 1808 Realty agreed to contribute funds to assist the Estate and/or B&H in defraying tax obligations arising in connection with the sale of the Premises to the extent such tax obligations exceeded $2,500,000 under certain circumstances and subject to the terms and conditions of the Contribution Agreement. The Estate agreed to contribute Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "**Estate Tax Contribution**"), Maplewood agreed to contribute Four Million Dollars ($4,000,000.00) (the "**Maplewood Tax Contribution**") and 1808 Realty agreed to contribute One Million Five Hundred Thousand Dollars ($1,500,000.00). The Estate deposited $2,500,000 in cash and Maplewood deposited $4,000,000 in cash into escrow to secure their potential obligations to contribute to any income tax due as a result of the sale of the Premises.

23. As reflected in paragraph 1 of the Contribution Agreement, the parties expected that the Estate would be subject to U.S. federal, state, and local income taxation in an amount not in excess of Two Million Dollars ($2,000,000.00) ("**Tax Liability**") as a result of the gain the Estate expected to recognize as a result of the sale of the Premises to Maplewood.

24. Paragraph 1 of the Contribution Agreement permitted the Estate to draw from escrow an amount up to, but not in excess of, the Estate Tax Contribution to satisfy such Tax Liability.

25. In the event that the Internal Revenue Service or any state or local taxing authority (a "**Taxing Authority**") asserts that additional income taxes are due from the Estate and/or B&H as a result of a contention by a Taxing Authority that (i) income or gain must be recognized by B&H as a result of the disposition (or deemed disposition) of the Premises by B&H, and/or (ii) additional income or gain must be recognized by the Estate as a result of a distribution (or deemed distribution) of the net proceeds from such disposition of the Premises by B&H to the Estate ("**Additional Tax Liability**"), paragraph 1 of the Contribution Agreement provides that, subject to limitations of Section 2 of the Contribution Agreement, payment of any such Additional Tax Liability may be drawn by the Taxpayers from the balance, if any, of the Estate Tax Contribution first until the Estate Tax Contribution is exhausted, and thereafter from the Maplewood Tax Contribution until the Maplewood Tax Contribution is exhausted.

26. Paragraph 1 of the Contribution Agreement further provides that in the event that there are any unsatisfied Additional Tax Liabilities after the Estate Tax Contribution and Maplewood Tax Contribution have been drawn in their entirety, 1808 Realty shall pay an amount not in excess of One Million Five Hundred Thousand Dollars ($1,500,000.00) ("**1808 Realty Tax Contribution**") to satisfy such unpaid Additional Tax Liabilities. In the event following payment in full by 1808 Realty of the 1808 Realty Tax Contribution there are any unsatisfied Additional Tax Liabilities, paragraph 1 of the Contribution Agreement provides that Maplewood shall pay an amount equal to such unsatisfied Additional Tax Liability not to exceed One Million Dollars ($1,000,000.00). Maplewood's remaining possible obligation of $1,000,000 and 1808 Realty's obligation to contribute $1,500,000 were evidenced by the Contribution Agreement and not funds deposited in escrow. Any Additional Tax Liability remaining thereafter is the sole obligation of the Estate.

27. The Estate, Maplewood and Chicago Title entered into an escrow agreement the same date as the Contribution Agreement, *i.e.* July 24, 2015, (the "**Escrow Agreement**"). A true and correct copy of the Escrow Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

28. Pursuant to the Escrow Agreement, Chicago Title, as escrow agent, agreed to hold the Maplewood Tax Contribution and the Estate Tax Contribution in escrow and distribute these contributions in accordance with the terms and conditions of the Escrow Agreement and the Contribution Agreement.

29. Maplewood deposited with Chicago Title the Four Million Dollar ($4,000,000) Maplewood Tax Contribution, to be held in an escrow account at Citibank ("**Escrow**") subject to the terms and conditions of the Escrow Agreement.

30. The Estate deposited with Chicago Title the Two Million Five Hundred Thousand Dollar ($2,500,000) Estate Tax Contribution, to be held in escrow subject to the terms and conditions of the Escrow Agreement.

31. The Escrow Agreement defines the Maplewood Tax Contribution and the Estate Tax Contribution collectively as the Escrow Deposit.

32. Pursuant to Section I of the Escrow Agreement, Chicago Title was to "invest the Escrow Deposit in an interest bearing account at Citibank".

33. Paragraph 2 of the Contribution Agreement provides, *inter alia*, that

> during the period commencing on the date hereof [July 24, 2015] and ending three years from the date of this Agreement, after compliance with the terms and conditions otherwise set forth herein, the Contributors' obligations to make a payment in respect of any Additional Tax Liability shall be satisfied from the Escrow but only after the Estate Tax Contribution shall have first been exhausted.

7

34. Under the Contribution Agreement, the Estate was required to provide Maplewood and 1808 Realty with tax returns reporting the income tax consequences of the sale of the Premises at least fifteen days prior to (i) the date on which the Estate intended to file the returns; or (ii) the date on which the returns were required to be filed, whichever is earlier.

35. Given the magnitude of the obligation that Maplewood agreed to assume in respect of funding the Additional Tax Liabilities, the 15 day advance notice requirement was specifically designated as a material term of the Contribution Agreement in order to ensure that Maplewood had adequate time to review the tax return(s) that the Estate planned to file.

36. Specifically, paragraph 3(a) of the Contribution Agreement provides that:

> The Estate shall provide to the Contributors copies of the Taxpayers' U.S. federal, state, and local income tax returns reporting the income tax consequences of the Transaction for the Contributors' review and comment not less than fifteen (15) calendar days before the earlier of (1) the date (including extensions) such tax return is required to be filed with such Taxing Authority, or (2) the date such tax return is actually filed with such Taxing Authority.

37. The Contribution Agreement provides that the failure of the Estate to provide such tax returns not less than fifteen days before the earlier of their filing date or due date was a material breach of the agreement, causing the agreement to terminate and be of no further force and effect.

38. Paragraph 7 of the Contribution Agreement provides, *inter alia*, that the Contribution Agreement:

> [s]hall terminate earlier [than October 15, 2022] and be of no further force and effect upon (I) the occurrence of a material breach by the Estate of its obligations under this Agreement, which shall be deemed to include failure to comply with the Estate's obligations pursuant to paragraph 3(a), 3(b), 3(c), 3(d), or 3(e), including failure to timely provide Contributors with copies of the tax returns or notices as required in paragraph 3(a), 3(b) and 3(c) . . . .

39. Pursuant to the Escrow Agreement, Maplewood is entitled to demand the return of the Maplewood Tax Contribution in the event of the Estate's material breach of the Contribution Agreement.

40. Section 2(B) of the Escrow Agreement provides, *inter alia*, that:

> In the event that any party, hereto, in its sole discretion, determines the conditions for payment of all or part of the Escrow Deposit have been satisfied pursuant to the Contribution Agreement, such party, by simultaneous written notice ("**Release Notice**") delivered to Escrow Agent and to the other parties hereto, may demand payment of all or any part of the Escrow Deposit to the extent that such party is so entitled.

41. Paragraph 8 of the Contribution Agreement provides, *inter alia,* that it "shall be governed and construed in accordance with the laws of the State of New York without regarding to the conflict of law principles of such state."

42. Similarly, Section 9 of the Escrow Agreement provides, *inter alia,* that the Escrow Agreement "shall be construed, enforced and administered in accordance with the laws of the State of New York, applicable to contracts executed, delivered and to be fully performed in State of New York."

43. Paragraph 8 of the Contribution Agreement provides that:

> the prevailing party in any suit, action, or proceeding arising out of or related to this Agreement shall be reimbursed by the other party for its or his/her attorneys' fees and other costs and expenses, including travel, incurred in the investigation, preparation, defense and prosecution of such action or proceeding.

**The Estate's Breach of the Contribution Agreement**

44. On March 14, 2017, the Estate provided Maplewood with a copy of its 2015 New York State and federal tax returns. Neither tax return had been previously provided to Maplewood.

45. On March 15, 2017, the Estate filed its 2015 New York State and federal tax returns.

46. The Estate thus provided Maplewood with a copy of the tax returns only one day prior to their filing rather than fifteen days prior to their filing as required by paragraph 3(a) of the Contribution Agreement.

47. On April 3, 2016, Maplewood sent Chicago Title, by overnight mail, a Release Notice seeking the return of the Maplewood Tax Contribution (*i.e.* $4,000,000), with interest, as a result of the Estate's breach of paragraph 3(a) of the Contribution Agreement.

48. Also on April 3, 2016, Maplewood sent a copy of the Release Notice, by overnight mail, to the Estate, B&H, and 1808 Realty.

49. Pursuant to Section 2(B) of the Escrow Agreement, "If within five (5) business days after receipt of the Release Notice, the other party [to the Escrow Agreement] (or its attorney) has not given written notice . . . to [Chicago Title] that the payment to the requesting party is authorized, then the payment request by such Release Notice shall be deemed to be in dispute."

50. The Estate did not respond to the Release Notice within five business days after receipt of the Release Notice.

51. By letter dated May 15, 2017, Anita Cohen, Esq., on behalf of Sharon Sendyk, "the current administrator of the Estate of Benjamin Sendyk," authorized Chicago Title

"to release the $4,000,000 + applicable interest which is being held in escrow in accordance with the above referenced Escrow Agreement" and acknowledged "that the Tax Contribution Agreement dated July 24, 2015 is terminated and that Maplewood is released from any obligations under that Agreement." However, by email dated May 18, 2017, Ms. Cohen indicated that her authorization to release the money being held in escrow should "be held in abeyance ... pending the resolution of certain issues raised by the lawsuit brought in the U.S. District for the Southern District of New York on behalf of Maplewood."

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST THE ESTATE
### (Breach of Contract)

52. Maplewood incorporates by reference Paragraphs 1 through 51 as if fully set out herein.

53. Maplewood has complied in all material respects with the terms and conditions of the Contribution Agreement.

54. Maplewood has complied in all material respects with the terms and conditions of the Escrow Agreement

55. The Estate failed to provide Maplewood with a copy of the state and federal tax returns filed by (or on behalf of) the Estate on March 15, 2017 "not less than fifteen (15) calendar days before" their filing "for review and comment" as required by paragraph 3(a) of the Contribution Agreement.

56. Pursuant to paragraph 7 of the Contribution Agreement, the Estate's failure to provide Maplewood with a copy of the Estate's state and federal tax returns at least 15 days prior to the Estate's filing of such tax returns is a material breach of the Contribution Agreement.

57. As a result of the Estate's material breach of the Contribution Agreement, pursuant to paragraph 7 of the Contribution Agreement, the Contribution Agreement terminated and is "of no further force and effect".

58. As a result, Maplewood is not obligated to make any payment pursuant to the Contribution Agreement with respect to any Additional Tax Liability.

59. Maplewood demanded the return of the Maplewood Tax Contribution from the Escrow.

60. The Estate, through its failure to respond to the Release Notice within five business days after receipt thereof, objected to the return of the Maplewood Tax Contribution to Maplewood.

61. The Estate's refusal to consent to the return of the Maplewood Tax Contribution to Maplewood is lacking in foundation and wrongful as the Contribution Agreement has terminated and is of no further force and effect.

62. Maplewood has been damaged by the Estate's breach of the Contribution Agreement in an amount to be determined at trial, but not less than Four Million Dollars ($4,000,000), plus accrued interest, and Maplewood's attorney's fees and other costs and expenses, including travel, incurred in the investigation, preparation, and prosecution of this action.

63. Additionally, as a result of the Estate's breach of the Contribution Agreement, Maplewood was required to commence this action and name Chicago Title, as escrow agent, as a necessary party to this action.

64. In the event that Chicago Title seeks indemnity pursuant to the Escrow Agreement from the Estate and Maplewood for its costs (including attorneys' fees) incurred in

connection with this action, the Estate is required to pay the entirety of such costs and fully indemnify Chicago Title for any claim made by Chicago Title for indemnity under the Escrow Agreement.

### AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Declaratory Judgment)

65. Maplewood incorporates by reference Paragraphs 1 through 64 as if fully set out herein.

66. An actual controversy exists between Maplewood and Defendants relating to Maplewood's obligations under the Contribution Agreement and Maplewood's right to return of the Maplewood Tax Contribution.

67. Circumstances exist that justify the determination by this Court, pursuant to 28 U.S.C. § 2201, of the rights and obligations of the parties, a determination that will be beneficial to all of the parties.

68. Pursuant to the terms of the Escrow Agreement, Maplewood caused the Maplewood Tax Contribution to be delivered to Chicago Title.

69. As a result of the Estate's breach of the Contribution Agreement, pursuant to the terms of the Contribution Agreement and Escrow Agreement, (i) the Maplewood Tax Contribution, plus accrued interest, should be disbursed to Maplewood from Escrow; (ii) the Contribution Agreement is terminated and of no further force and effect; and (iii) as a result of the termination of the Contribution Agreement, Maplewood has no further obligation to make any payment with respect to any Additional Tax Liability.

70. By letter dated May 15, 2017, Sharon Sendyk, as administrator of the Estate, through her counsel, indicated her consent with each of the contentions in Paragraph 69 above.

71. However, subsequently, Sharon Sendyk, as administrator of the Estate, through her counsel, withdrew her consent to the release of the Maplewood Tax Contribution.

72. Chicago Title has not released the Maplewood Tax Contribution from Escrow.

73. Accordingly, an actual dispute has arisen between Maplewood and the Estate relating to their respective rights and obligations with respect to the Maplewood Tax Contribution retained in Escrow and Maplewood's further obligations under the Contribution Agreement.

74. B&H has an interest in the outcome herein as a Taxpayer with certain rights to draw from Escrow under the Contribution Agreement.

75. 1808 Realty has an interest in the outcome herein as one of the Contributors under the Contribution Agreement.

76. Maplewood requests a declaration that (i) it is entitled to distribution of the Maplewood Tax Contribution from Escrow, plus accrued interest; (ii) the Contribution Agreement is terminated and of no further force and effect; and (iii) as a result of the termination of the Contribution Agreement, Maplewood has no further obligation to make any payment with respect to any Additional Tax Liability.

WHEREFORE, Maplewood requests:

a. On its First Claim for Relief against the Estate, damages in an amount to be determined at trial in an amount not less than $4,000,000, plus accrued interest, and the cost of any indemnification sought by Chicago Title from Maplewood;

b. On its Second Claim for Relief against all defendants, a declaration that (i) Maplewood is entitled to the release of the Maplewood Tax Contribution of $4,000,000, plus accrued interest, from Escrow; (ii) the Contribution Agreement is terminated and of no further force and effect; and (iii) as a result of the termination of the Contribution Agreement, Maplewood has no further obligation to make any payment with respect to any Additional Tax Liability;

c. From the Estate, Maplewood's attorney's fees and other costs and expenses, including travel, incurred in the investigation, preparation, and prosecution of this action; and

d. For any additional and other relief this Court deems just and proper.

Respectfully submitted,

Dated:    May 30, 2017  
           New York, New York

BRYAN CAVE LLP

By: _/s/ Daniel P. Waxman_

Daniel Waxman (DW-0599)  
Attorneys for Plaintiff  
1290 Avenue of the Americas  
New York, New York 10104  
(212) 541-2000