UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MAPLEWOOD AT UPPER EAST SIDE, LLC,

    -against-

MALA SENDYK AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,
SHARON SENDYK AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,
CHICAGO TITLE INSURANCE COMPANY, as
Escrow agent/stakeholder, INTERIORS BY B & H,
INC. and 1808 2nd Realty, LLC,

    Defendants

And

SHARON SENDYK AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK

    -against-

LEONARD RODNEY ESQ, AND LARRY
GALLUS, CPA

-----------------------------------------------------------------x

Case No: 1:17-cv-02914-DAB

THIRD-PARTY COMPLAINT

ELECTRONICALLY FILED

For her Third-Party Complaint, Third-Party Plaintiff, Sharon Sendyk as Administrator of the Estate of Benjamin Sendyk, by and through counsel, states and alleges as follows:

## INTRODUCTION

1. Plaintiff, Maplewood at Upper East Side, LLC ("Maplewood") brought an action in the U.S. District Court for the Southern District of New York alleging breach of contract against Defendants, Mala Sendyk, as Administrator of the Estate of Benjamin Sendyk,

and Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk, and seeking a declaratory judgment in connection with the Tax Contribution Agreement and Escrow Agreement which Mala Sendyk had entered into while she was the duly appointed and exclusive Administrator of the Estate of Benjamin Sendyk.

2. In the event that Maplewood succeeds in its claims against the Estate, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk will be damaged in an amount to be determined at trial, but not less than $4,000,000 plus accrued interest; plus Maplewood's fees and other costs, including travel, as stipulated in the Tax Contribution Agreement; plus costs which will be incurred if Chicago Title seeks indemnity pursuant to the Escrow Agreement.

3. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk, seeks indemnification from each Third-Party Defendant for all damages which might be awarded to Maplewood and assessed against Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk.

## THE PARTIES

4. Mala Sendyk served as the Administrator of the Estate of Benjamin Sendyk until she was removed from the position via the August 2, 2016 decree of the Surrogate, Kings County. Upon information and belief, Mala Sendyk resides at 2804 Avenue Z, Brooklyn, New York 11215.

5. Leonard Rodney served as legal counsel to the Estate during the period when Mala Sendyk was the Administrator, and he continues to serve as Mala Sendyk's personal

attorney. Upon information and belief, his business address is 1565 Franklin Avenue, Mineola, New York 11501.

6. Lawrence Gallus, CPA, PC served as accountant to the Estate during the period when Mala Sendyk was the Administrator, and thereafter he prepared the tax returns which are the subject of this litigation. Upon information and belief, his business address is 1613 Avenue Z, Brooklyn, New York 11235.

7. Sharon Sendyk was appointed the Administrator of the Estate of Benjamin Sendyk by the Surrogate of Kings County effective August 11, 2016. She resides at 9 Van Arsdale Court, East Brunswick, New Jersey 08816.

8. Upon information and belief, Maplewood at Upper East Side, LLC is a Connecticut limited liability company organized under the laws of the State of Connecticut and maintaining an office at One Gorham Island, Westport Connecticut 06880. Upon information and belief, Maplewood's sole member is Gregory D. Smith, a resident of Connecticut

9. Upon information and belief, 1808 Realty is a New York limited liability company organized under the laws of the New York State and maintaining an office at 111 Broadway, Suite 1202, New York, New York 10006.

## JURISDICTION AND VENUE

10. This Court has supplemental subject matter jurisdiction over this Third Party Complaint pursuant to 28 U.S.C. § 1367 because the claims of Third-Party Plaintiff Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk, against Third-Party Defendants,

Leonard Rodney and Lawrence Gallus, arise out of the transaction or occurrence that is the subject matter of Plaintiff's claims against Sharon Sendyk.

11. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) based on diversity of the parties and because this matter involves a controversy in excess of $75,000, exclusive of interests and costs.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the claims herein arose in this District, as reflected by the location of the real property whose sale led to this action and the provisions of the subject tax contribution binds the parties thereto to resolve all disputes in the courts of New York State.

## FACTS

13. Mala Sendyk, as Administrator of the Estate of Benjamin Sendyk, (hereafter "Mala") through her attorney, Leonard Rodney (hereafter "Rodney"), entered into an agreement with 1808 2d Avenue Realty and/or Maplewood at Upper East Side (hereafter the "Buyers") to sell the Estate property located at 1801 Second Avenue, New York, New York (hereafter "Second Avenue Property").

14. In connection with the sale of the Second Avenue Property, Rodney entered into a Tax Contribution Agreement and Escrow Agreement (hereafter jointly referred to as the "Agreements") with the Buyers on July 24, 2015.

15. Rodney was solely responsible for negotiating, on behalf of the Estate of Benjamin Sendyk, all terms and conditions of the Agreements, and he signed the Agreements as the "Attorney-in Fact" of the Estate of Benjamin Sendyk.

16. Pursuant to the terms of the Agreements, Rodney acknowledged that the Estate would be subject to U.S. federal, state and local income taxes totaling approximately $2,000,000 as a result of the sale of the Second Avenue Property.

17. Rodney anticipated that the federal, state or local taxing authorities might claim that taxes in excess of $2,000,000 may be due as a result of manner and form in which Mala Sendyk, as the Administrator of the Estate, and Rodney, as the Attorney-in-Fact to the Estate, had elected to dispose of the Second Avenue Property.

18. To address the potential tax consequences associated with the sale of the Second Avenue Property, the Agreements provided that the Estate would contribute $2,500,000, Maplewood would contribute $4,000,000 and 1808 Realty would contribute $1,500,000, with the contributions of the Estate and Maplewood to be deposited into an escrow account, and the contribution of 1808 Realty to be made available if the other contributions were exhausted.

19. Sharon Sendyk (hereafter "Sharon") had no input into the negotiation of the sale, the sales agreement, the tax contribution agreement or the escrow agreement, and was not provided with copies of any of the documents prior to their execution.

20. In July 2016, approximately one year after the signing of the above documents and the sale of the Second Avenue Property, the Surrogate's Court, Kings County, revoked Mala's Letters of Administration due to her neglect of the estate and her complicity in the misuse of the estate's assets by her daughter Linda, Linda's husband and Linda's brother-in-law.  See Exhibit A, Decree issued by the Surrogate Court, Kings County, dated August 2, 2016.

21. The Surrogate's Court, Kings County issued Letters of Administration to Sharon Sendyk (hereafter "Sharon") effective August 15, 2016. See Exhibit B.

22. Following the removal of Mala and the appointment of Sharon as Administrator, counsel for Mala, Leonard Rodney (hereafter "Rodney"), notified Sharon's counsel, via email, that: "With respect to the preparation of the tax returns for 2015 (which also requires filing amended returns for Interiors), our accountant is working on them and is doing so in accordance with the strict requirements of the Tax Contribution Agreement which was entered into with the purchaser of 1808 2nd Avenue. In light of the Surrogate's decision, do you want him to continue with his work? Given the fact that he is familiar with the transaction and all of the related background, I think it makes sense for him to continue, rather than having to bring someone else up to speed, but will wait to hear from you." Counsel for Sharon responded as follows: "We give permission for your attorney [sic] to continue with this single task, subject to review by our accountant before it is filed." A copy of the July 26- 27, 2016 email correspondence is annexed as Exhibit C.

23. On September 28, 2016, just eighteen days before the returns were due, Sharon's counsel was informed, for the first time, by Rodney that the federal and New York State tax returns for the income which the estate had gained as a result of the sale of the 1808 2nd Avenue property were due by October 17, 2016, but that he and/or Larry Gallus ("Gallus"), the accountant who had been working for the estate, had not timely prepared them, and therefore had to file applications for extensions of time. A copy of the email and its attachment are annexed hereto as Exhibit D.

24. Although Rodney and Gallus had received permission from Sharon two months earlier to proceed with preparing the required tax returns, Rodney and/or Gallus did not prepare them in a timely manner, but rather filed applications for extensions of time.

25. Sharon had no input into the decision to delay preparing the tax returns or into the preparation of the forms which were required for the extension requests.

26. Although she had no input into the decision to request time extensions or the computation of the estimated taxes due, Sharon, as the Administrator of the Estate at the time the extension requests were filed, had to arrange for money to be released from the escrow account for the estimated payments which needed to accompany the requests for extensions. After some discussion among the parties, it was decided that a total of $2.5 million in estimated taxes would be paid, with $1,666,667 going to the United States Treasury and $833,333 going to New York State. Sharon arranged for these payments to be made in a timely manner.

27. Pursuant to the extension applications, the final tax returns had to be filed by March 15, 2016. See Exhibit D.

28. As per the July 27th email (Exhibit C) Rodney represented that Gallus was fully knowledgeable about all the requirements of the Tax Contribution Agreement. As a result of these negligent and/or reckless misrepresentations by Rodney, Sharon reasonably relied upon Rodney and Gallus to prepare the tax returns accurately and in full compliance with all the requirements of the Tax Contribution Agreement, including, but not limited to, the requirement that the proposed tax returns be submitted to Maplewood fifteen days before being filed.

29. As per Exhibit C, Sharon's authorization for Gallus to prepare the tax returns was contingent upon Sharon receiving copies of all draft returns in sufficient time for any and all necessary review.

30. Sharon had no control over either the timing or the substance of the income tax returns since Rodney and/and Gallus possessed all the documents and information needed in order to prepare the returns.

31. Following the submission of the extension applications, Sharon, through her counsel, made frequent and repeated requests to both Rodney and Gallus, orally and in writing, for updates on their progress in preparing the returns and for the anticipated date when Sharon would receive the draft returns for review.

32. In response to the repeated requests from Sharon's counsel, Rodney and Gallus engaged in an ongoing pattern of blaming each other for the delay, making excuses why the returns had not yet been provided, and promising to provide them sufficiently before the filing deadline.

33. There were additional delays because the returns that were initially provided to Sharon's counsel were incorrect, and had to be revised by Gallus in order to reflect the correct Administrator.

34. As a result of the continuous delaying tactics and negligence of Rodney and Gallus, counsel for Sharon did not receive the correct tax returns until March 14, 2017, the day before the deadline for their filing.

35. Because copies of the tax returns were not provided to Maplewood fifteen or more days prior to their being filed, Maplewood brought the instant action seeking return of the

$4,000,000 currently being held in escrow, and a declaratory judgment that the Tax Contribution Agreement and Escrow Agreement were terminated.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST RODNEY AND GALLUS

## NEGLIGENT MISREPRESENTATION

36. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk repeats and incorporates by reference Paragraphs 1 through 35 as if fully set out herein.

37. In his July 26, 2016 email to Sharon's counsel, Rodney made the following representation:

> With respect to the preparation of the tax returns for 2015 (which also requires filing amended returns for Interiors), our accountant is working on them and **is doing so in accordance with the strict requirements of the Tax Contribution Agreement** which was entered into with the purchaser of 1808 2nd Avenue. In light of the Surrogate's decision, do you want him to continue with his work? Given the fact that he is familiar with the transaction and all of the related background, I think it makes sense for him to continue, rather than having to bring someone else up to speed, but will wait to hear from you.

Exhibit C (emphasis added)

38. In reliance on the representations made by Rodney made in his July 26, 2016 email, that "our accountant" [Gallus] was preparing the tax returns "in accordance with the strict requirement of the Tax Contribution Agreement," Sharon agreed to let Gallus prepare the income tax returns which had to be filed as a result of the sale of the Second Avenue property.

39. In accordance with Sharon's stipulation that Gallus would be allowed to prepare the tax returns only if Rodney and Gallus agreed that those tax returns would be provided to her in sufficient time for review, and in reliance on the subsequent representations made by

Rodney and Gallus in their oral and email communications with Sharon's counsel, Sharon reasonably believed that she would receive copies of the tax returns in sufficient time for any and all desired or required review. See, Exhibit E in which Gallus stated: I will have the tax return by Monday, February 20."

40. Sharon first received correct copies of the tax returns on March 14, 2015, just one day before the deadline for their filing.

41. The negligent and false representations made by Rodney and Gallus made it impossible for Sharon to comply with the terms of the Tax Contribution Agreement.

42. As a consequence of the negligent and false representations made by Rodney and Gallus, Sharon refrained from requesting additional extensions of time from the pertinent taxing authorities, an action which would have allowed her to comply with the terms of the Tax Contribution Agreement.

43. In the event that Maplewood succeeds in its claims against the Estate, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk will be damaged in an amount to be determined at trial, but not less than $4,000,000 plus accrued interest; plus Maplewood's fees and other costs, including travel, as stipulated in the Tax Contribution Agreement; plus costs which will be incurred if Chicago Title seeks indemnity pursuant to the Escrow Agreement.

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST RODNEY AND GALLUS**
**BREACH OF AGREEMENT**

44. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk repeats and incorporates by reference Paragraphs 1 through 43 as if fully set out herein.

45. Sharon fully complied with the terms and conditions of the agreement set forth in the July 26-27, 2016 email correspondence between her Counsel and Rodney.

46. Sharon fully complied with the terms and conditions of the agreement set forth by Gallus in his email of February 13, 2017 in which he stated unequivocally: I will have the tax return by Monday February 20." See, Exhibit E.

47. Rodney breached his Agreement with Sharon by failing to ensure that the income tax returns were prepared in accordance with the terms and conditions of the Tax Contribution Agreement.

48. Gallus breached his Agreement with Sharon by failing to ensure that the income tax returns were provided to Sharon by the promised date of February 20 2017.

49. The breach of agreement by Rodney made it impossible for Sharon to comply with the terms of the Tax Contribution Agreement.

50. The breach of agreement by Gallus made it impossible for Sharon to comply with the terms of the Tax Contribution Agreement.

51. As a consequence of the breach of agreement by Rodney and Gallus, Sharon refrained from requesting additional extensions of time from the pertinent taxing authorities, an action which would have allowed her to comply with the terms of the Tax Contribution Agreement.

52. In the event that Maplewood succeeds in its claims, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk will be damaged in an amount to be determined at trial, but not less than $4,000,000 plus accrued interest; plus Maplewood's fees and other costs, including travel, as stipulated in the Tax Contribution Agreement; plus costs which will be incurred if Chicago Title seeks indemnity pursuant to the Escrow Agreement.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST RODNEY AND GALLUS
## PROFESSIONAL NEGLIGENCE

53. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk repeats and incorporates by reference Paragraphs 1 through 52 as if fully set out herein.

54. Rodney, as Attorney-in-Fact to the Estate of Benjamin Sendyk, represented the Estate in all its negotiations with Maplewood and/or 1808 Realty Co., and owed a duty to the estate to represent its interests in a competent and proper manner.

55. Rodney, as Attorney-in-Fact to the Estate of Benjamin Sendyk, was entrusted to make all decisions relating to how the Second Avenue property would be disposed of, including, but not limited to, deciding in what form and under what entity or entities it would be sold, and negotiating all terms of the Sales Agreement, Tax Contribution Agreement and the Escrow Agreement.

56. Rodney breached his duty to the Estate by making improper and/or incorrect decisions concerning the manner in which the Second Avenue property should be disposed and by his negligence in negotiating the terms of the Sales Agreement, Tax Contribution Agreement and the Escrow Agreement.

57. As a result of Rodney's negligence, decisions made in connection with the sale of the Second Avenue Property and the negotiation of the Sales Agreement, Tax Contribution Agreement and Escrow Agreement have endangered the Estate and its assets.

58. Gallus, as Accountant to the Estate, owed a duty to the Estate to prepare the income tax returns in an accurate manner and in accordance with the terms of the Tax Contribution Agreement.

59. Gallus breached his duty to the Estate by failing to prepare the income tax returns in accordance with the terms of the Tax Contribution Agreement.

60. Gallus breached his duty to the Estate by making errors in preparing the income tax returns which resulted in an overpayment of over $250,000 in federal income taxes.

61. As a result of Gallus' negligence, the Estate and its assets have been endangered.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST RODNEY AND GALLUS
## BREACH OF FIDUCIARY DUTY

62. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk repeats and incorporates by reference Paragraphs 1 through 61 as if fully set out herein.

63. Rodney, as Attorney in Fact to the Estate of Benjamin Sendyk, represented the Estate in all its negotiations with Maplewood and/or 1808 Realty Co., and owed a fiduciary duty to the estate.

64. Rodney, as Attorney in Fact to the Estate of Benjamin Sendyk, was entrusted to make all decisions relating to how the Second Avenue property would be disposed of, including, but not limited to, deciding in what form and under what entity or entities it would be sold, and negotiating all terms of the Sales Agreement, Tax Contribution Agreement and the Escrow Agreement.

65. Rodney breached his duty to the Estate by making improper and/or incorrect decisions concerning the manner in which the Second Avenue property should be disposed, and by his failure to negotiate proper and adequate terms in the Sales Agreement, Tax Contribution Agreement and the Escrow Agreement.

66. As a result of Rodney's breach of fiduciary duty, the Estate and its assets have been endangered.

67. Gallus, as Accountant to the Estate, owed a fiduciary duty to the Estate in his preparation of the Estate income tax returns.

68. Gallus breached his fiduciary duty to the Estate by failing to prepare the income tax returns in accordance with the terms of the Tax Contribution Agreement.

69. Gallus breached his fiduciary duty to the Estate by making errors in preparing the income tax returns which resulted in an overpayment of over $250,000 in federal income taxes.

70. As a result of Gallus' breach of fiduciary duty, the Estate and its assets have been endangered.

## AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST RODNEY AND GALLUS
## COMMON LAW INDEMNIFICATION

71. Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk repeats and incorporates by reference Paragraphs 1 through 70 as if fully set out herein.

72. In the event that Maplewood succeeds in its claims against the Estate, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk will be damaged in an amount to be determined at trial, but not less than $4,000,000 plus accrued interest; plus Maplewood's fees and other costs, including travel, as stipulated in the Tax Contribution Agreement; plus costs which will be incurred if Chicago Title seeks indemnity pursuant to the Escrow Agreement.

73. In the event that Maplewood succeeds in any or all of its claims against the Estate, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk, is entitled to the full

cost of defense and indemnification from Third-Party Defendants Rodney and Gallus for any damages awarded to Maplewood and assessed against Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk.

## PRAYER FOR RELIEF

WHEREFORE, Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk, respectfully requests that this Court enter judgment for her and against Third-Party Defendants, Rodney and Gallus and:

a) Declare that any damages assessed against the Estate or Sharon Sendyk, as Administrator for the Estate of Benjamin Sendyk, pursuant to the claims of Maplewood will be due and owed by Rodney and/or Gallus.

b) Grant Sharon Sendyk as Administrator for the Estate of Benjamin Sendyk full indemnification from Rodney for all damages awarded to Maplewood, jointly and severally;

c) Grant Sharon Sendyk as Administrator for the Estate of Benjamin Sendyk full indemnification from Gallus for all damages awarded to Maplewood, jointly and severally;

d) Grant Sharon Sendyk as Administrator for the Estate of Benjamin Sendyk costs and attorneys' fees, and such other and further relief as may be just or proper.

Dated: June 30, 2017

Respectfully submitted;

*/s/ Anita S. Cohen/*

Anita S. Cohen, Esq. (4198586)
55 Bowling Green Place
Staten Island, New York 10314
Telephone: 917:446-0984
Attorney for Sharon Sendyk, as Administrator of the Estate of Benjamin Sendyk