```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
```
Maplewood at Upper East Side LLC,

                Plaintiff,

                                        17 Civ. 2914 (DAB)
    -against-                           ORDER

Sendyk, et al.,

                Defendants.
```
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

Before the Court is Defendant Larry Gallus' ("Gallus") Motion to Dismiss Counts I, II, and IV[1] of the Third Party Complaint ("TPC"), brought by Sharon Sendyk ("Sharon") the Administrator of the Estate of Benjamin Sendyk (the "Estate"). (Third Party Compl. ("TPC"), ECF No. 36.) For the reasons stated below, his Motion is GRANTED in part and DENIED in Part.

I.    <u>Relevant Background</u>

The following facts are drawn from the TPC and are assumed true for purposes of the instant motion.

Mala Sendyk ("Mala"), as Administrator of the Estate, agreed to sell the Estate property located at 1801 Second Avenue, New York, New York to 1808 2nd Avenue Realty ("1808 Realty") and/or

---

[1] Gallus only addresses Counts I, II, and IV of the TPC in his Memorandum of Law. (<u>See</u> Def.'s Mem., ECF No. 56.) Accordingly, we assume that he only moves to dismiss those Counts.

Maplewood at Upper East Side ("Maplewood")[2]. (TPC ¶ 13.) Leonard Rodney ("Rodney") served as legal counsel to the Estate during the period when Mala was the Administrator, and he continues to serve as Mala's personal attorney. (Id. ¶ 5.) Allegedly, Rodney was solely responsible for negotiating, on behalf of the Estate, all terms and conditions of the Agreements, and he signed the Agreements as the "Attorney-in Fact" of the Estate. (Id. ¶ 15.) Gallus, served as accountant to the Estate during the period when Mala was the Administrator of the Estate; he prepared the tax returns which are the subject of this litigation. (Id. ¶ 6.)

On July 24, 2015, Rodney entered into a Tax Contribution Agreement and an Escrow Agreement (jointly, the "Agreements") with Maplewood and 1808 Realty. (Id. ¶ 14.) The Agreements provided that the Estate would contribute $2,500,000, Maplewood would contribute $4,000,000, and 1808 Realty would contribute $1,500,000, with the contributions of the Estate and Maplewood to be deposited into an escrow account, and the contribution of 1808 Realty to be made available if the other contributions were

---

[2] Maplewood brought this Action on April 21, 2017 against Mala Sendyk and Sharon Sendyk as Administrators of the Estate of Benjamin Sendyk, and Chicago Title Insurance Company in its capacity as Escrow Agent/Stakeholder. (See ECF No. 1.) Maplewood later amended its Complaint to include Defendants 1808 Realty and Interiors by B&H Inc. (See ECF No. 17.) On January 10, 2018, Default Judgment was granted against Interiors by B&H Inc. for failure to appear or otherwise respond to the Complaint. (ECF No. 79.) On June 11, 2018, Default Judgment was granted against 1808 Realty for failure to appear or otherwise respond to the Complaint. (ECF No. 87.) On June 11, 2018, Chicago Title Insurance Company was voluntarily dismissed from this Action. (ECF No. 88.)

exhausted. (Id. ¶ 18.) The Tax Contribution Agreement required that the proposed tax returns be submitted to Maplewood fifteen days before filing. (Id. ¶ 28.) Allegedly, Rodney was solely responsible for negotiating all terms and conditions of the Agreements and he also signed them as the "Attorney-in-Fact" of the Estate. (Id. ¶ 15.) Allegedly, Sharon had no input into the negotiation of the sale, the sales agreement, or the Agreements, and she was not provided with copies of any of the documents prior to their execution. (Id. ¶ 19.) Thereafter, Sharon was appointed the Administrator of the Estate. (Id. ¶ 7.)

On July 26, 2016, after being appointed Administrator of the Estate, Sharon received the following email from Rodney:

> With respect to the preparation of the tax returns for 2015 (which also requires filing amended returns for Interiors), our accountant is working on them and is doing so in accordance with the strict requirements of the Tax Contribution Agreement which was entered into with the purchaser of 1808 2nd Avenue. In light of the Surrogate's decision, do you want him to continue with his work? Given the fact that he is familiar with the transaction and all of the related background, I think it makes sense for him to continue, rather than having to bring someone else up to speed, but will wait to hear from you.

(Id. ¶ 22.) Counsel for Sharon responded:

> We give permission for your attorney [sic] to continue with this single task, subject to review by our accountant before it is filed.

(Id. (alteration in original).) The emails are hereafter referred to as the "July 26-27, 2016 email correspondence."

On September 28, 2016, Sharon's Counsel was informed that the tax returns for the Estate had not been filed on time by Rodney or Gallus. (Id. ¶ 23.) Instead, Rodney and Gallus had filed applications for extensions of time. (Id. ¶ 24.) Allegedly, Sharon arranged for money to be released from the escrow account needed to accompany the requests for extensions of time but had no knowledge of or input into seeking extensions of time. (Id. ¶¶ 25-26.) Thereafter, Sharon, through her counsel, repeatedly requested Rodney and Gallus, orally and in writing, for updates on their progress in preparing the returns and for the anticipated date when Sharon would receive the draft returns for review. (Id. ¶ 31.)

Ultimately, Sharon did not receive the completed tax returns until March 14, 2017, the day before the deadline for their filing. (Id. ¶ 34.) Maplewood brought the instant action seeking return of the $4,000,000 currently being held in escrow, and a declaratory judgment that the Agreements be terminated because copies of the tax returns were not provided to Maplewood fifteen or more days prior to them being filed. (Id. ¶ 35.)

On June 30, 2017 Sharon filed the operative TPC against Rodney and Gallus in five counts: (i) negligent misrepresentation, (ii) breach of agreement, (iii) professional negligence, (iv) breach of fiduciary duty, and (v) common law indemnification. Specifically,

4

in Count I, Sharon alleges that she relied on an email from Gallus in which he communicated that he would give her the completed tax returns by February 20, 2017. (Id. ¶ 39.) Because he did not give them until March 14, 2017, Sharon could not comply with the terms of the Tax Contribution Agreement by not providing the completed tax forms to Maplewood fifteen days before filing. (Id. ¶ 42.) Moreover, in Count II, Sharon alleges that Gallus breached an agreement established in the July 26-27, 2016 email correspondence between Rodney and her Counsel. (Id. ¶ 47.)

On August 21, 2017, Gallus moved to dismiss the TPC.

II. Legal Standard on a Motion Under Rule 12(b)(6)

For a complaint to survive a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).[3] "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops

---

[3] Sharon is warned that the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), is outdated. (See Pl.'s Mem. in Opp'n 6, ECF No. 60.)

> short of the line between possibility and plausibility of entitlement to relief."

**Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009) (quoting **Twombly**, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." **Twombly**, 550 U.S. at 555 (citation and alteration omitted). "In keeping with these principles," the Supreme Court has stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

**Iqbal**, 556 U.S. at 679.

In considering a motion under Rule 12(b)(6), a court must accept as true all factual allegations set forth in a complaint and draw all reasonable inferences in favor of the plaintiff. See **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506, 508 n.1 (2002); **Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.**, 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," **Iqbal**, 556 U.S. at 678, which, like a complaint's "labels and conclusions,"

*Twombly*, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in, or integral to, the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

III. Discussion

   A. Count I – Negligent Misrepresentation

Under New York law,[4] a plaintiff bringing a negligent misrepresentation claim must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012) (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). "[A] special relationship requires a closer degree of

---

[4] It is undisputed that New York law applies.

trust than that in an ordinary business relationship[.]" <u>Wright v. Selle</u>, 27 A.D.3d 1065, 1067 (4th Dept. 2006)(citation omitted); <u>Tc Tradeco v. Eur.</u>, No. 651631/2015, 2017 N.Y. Misc. LEXIS 5593, at *9 (N.Y. Sup. Ct. June 15, 2017). Moreover, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." <u>Hydro</u>, 227 F.3d at 20-21 (citing <u>Murray v. Xerox Corp.</u>, 811 F.2d 118, 123 (2d Cir. 1987)). "Promises of future conduct are not actionable as negligent misrepresentations." <u>Murray</u>, 811 F.2d at 123.

Sharon's claim for negligent misrepresentation fails in two respects. First, there is no allegation in the TPC that there was anything more than a conventional business relationship between Gallus and the Estate.[5] Second, Sharon alleges that Gallus misrepresented that he would have the tax returns completed and returned to her by February 20, 2016. This cannot constitute misrepresentation because it is promissory and relates to future events. Therefore, Sharon's claim for negligent misrepresentation is DISMISSED.

---

[5] In his Motion papers, Gallus alleges that his services were performed pursuant to an Engagement Agreement executed by Mala on behalf of the Estate on June 1, 2016. (Def.'s Mem. 6.) He also argues that this Engagement Agreement releases him of much of his liability to the Estate alleged in the TPC. This document was not referenced in the TPC and therefore, we do not consider it in deciding this Motion.

B. <u>Count II – Breach of Agreement</u>

Count II, Breach of "Agreement," is dismissed.[6] "Under New York state law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." <u>MBIA Ins. Corp. v. Royal Bank of Can.</u>, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (citing <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 245-46 (2d Cir. 2000)). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 NY Jur 2d, Contracts §9)." <u>Kowalchuk v. Stroup</u>, 61 A.D.3d 118, 121 (1st Dept. 2009). In New York, "[c]onsideration is defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." <u>Richman v. Brookhaven Servicing Corp.</u>, 80 Misc. 2d 563, 363 (1st Dept. 2004) (citations omitted).

Sharon's claim for breach of contract fails because she does not allege the existence of a contract. Sharon alleges that July 26-27, 2016 email correspondence between her Counsel and Rodney

---

[6] Confusingly, Sharon does not specify whether she is trying to recover under a claim for breach of contract or some other equitable remedy which would not require that she allege an existing contract. We assume that she is alleging a breach of contract because she alleges that she fully complied with her obligations under the "agreement" indicating that she is proceeding with a breach of contract claim.

constituted a contract and that she fully complied with the terms and conditions set forth in it. However, the email correspondence did not establish any obligation on her part as Administrator of the Estate. She only agreed to let Gallus "continue with his work" but she did not communicate that the Estate would give him any benefit in return for his continuing on as the Accountant. Thus she has not alleged any consideration offered in exchange for his continued services; consequently, there is no allegation of an existing contract. Moreover, as a consequence of not having promised anything in return for Gallus' continued services, she could not have "fully complied" with any obligations, or lack thereof, imposed on her in the email correspondence. Thus, Count II of the TPC is DISMISSED for failure to state a claim.

C. Count IV – Breach of Fiduciary Duty

"Under New York law, a claim for breach of fiduciary duty requires (1) that the defendant owed [plaintiff] a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." Sang v. Hai, 951 F. Supp. 2d 504, 528 (S.D.N.Y. 2013) (alteration in original)(internal quotation marks and citations omitted). "[A] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of special circumstances that could

have transformed the parties' business relationship to a fiduciary one . . . ." Meridian Horizon Fund, LP v. KPMG (Cayman), 487 Fed. Appx. 636, 642 (S.D.N.Y. 2012) (quoting AHA Sales, Inc. v. Creative Bath Products, Inc., 58 A.D.3d 6, 867 N.Y.S.2d 169, 181 (App. Div. 2d Dept. 2008)).

As discussed supra, there is no allegation in the TPC that there was anything more than a conventional business relationship between Gallus and the Estate. Sharon does not allege any special circumstances that could have transformed Gallus and the Estate's relationship into a fiduciary one either. Sharon's breach of fiduciary claim thus fails as well.

### D. Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. Hutchison v. Deutsche Bank Sec., Inc., 647 F.3d 479, 490-91 (2d Cir. 2011).

The Complaint is wholly silent on any special circumstances that transformed Gallus' conventional business relationship with the Estate into a fiduciary or special relationship. Thus, repleading Counts I and IV would be futile. Moreover, the existence of a contract based on the sparse email communications averred in

11

the Complaint is so implausible, that it would be futile to allow Sharon to replead Count II. Accordingly, we deny leave to replead Counts I, II, and IV of the TPC.

IV. CONCLUSION

For the aforementioned reasons Counts I, II, and IV of the TPC are DISMISSED for failure to state a claim. In his Motion papers Gallus did not provide any arguments for the dismissal of Counts III or V of the TPC.[7] (See generally Def.'s Mem.) Accordingly, Gallus is ORDERED to answer Counts III and V of the Complaint within 30 days of this ORDER.

SO ORDERED.

Dated:     July 2, 2019
           New York, New York

_____
Deborah A. Batts
United States District Judge

---

[7] Gallus does argue generally (without specifying which Counts he is referring to), that Sharon's claims are not ripe for adjudication because the Estate has not yet suffered any measurable damages. He points to the allegations of damages in Counts I, II, and V which state that "[i]n the event that Maplewood succeeds in its claims against the Estate, Sharon Sendyk, as Administrator of the Estate . . . will be damaged in an amount to be determined at trial . . . ." (TPC ¶¶ 43, 52, 73.) However, it is well established law in the Second Circuit that:

> In a federal case governed by New York law, Rule 14(a) nevertheless permits a defendant to implead a joint tortfeasor for contribution before the right to contribution accrues, because that third party "may be" liable to the defendant for a share of the plaintiff's primary judgment. The defendant's claim for contribution is thus properly characterized as "contingent."

Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir. 1994) (citing Wright & Miller § 1451, at 407.) This argument thus fails.