UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- ------------------------------------------------------------------x

MAPLEWOOD AT UPPER EAST SIDE, LLC,

                      Plaintiff,                         Index No. 17-cv-02914-AKH

              - against -

MALA SENDYK, AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,
SHARON SENDYK, AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,
CHICAGO TITLE INSURANCE COMPANY, as
escrow agent/stakeholder, INTERIORS
BY B&H,INC., and 1808 2nd REALTY LLC,

            Defendants/Counterclaim-Plaintiff.
-----------------------------------------
SHARON SENDYK AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,

               Third-Party Plaintiff,

             - against -

LEONARD RODNEY, ESQ. and LARRY
GALLUS, CPA,

              Third-Party Defendants
- ------------------------------------------------------------------x

DEFENDANT SHARON SENDYK'S RULE 56.1
STATEMENT OF UNCONTESTED FACTS

1.      In or about July, 2015, the Estate of Benjamin Sendyk ("Estate") sold certain real

property located at 1808 Second Avenue, New York, New York to plaintiff ("Maplewood").

2.      At that time, defendant Mala Sendyk was the administrator and third party

defendants Leonard Rodney ("Rodney") and Lawrence Gallus ("Gallus") were respectively the

1

attorney and accountant for the estate.

3.     One issue prior to closing was whether the proper seller was a defunct corporation owned by decedent (B & H) or the Estate.

4.     Counsel for plaintiff was of the opinion that the estate was the proper seller.

5.     Gallus was of a contrary opinion. Annexed as Exhibit B are certain communications reflecting plaintiff's position that the Estate was the properly designated seller of the subject real property. See also Crisafi deposition excerpts (Exhibit E), pp. 18-20, 56; Gallus deposition excerpts (Exhibit S), pp. 41-42, ; Rodney deposition excerpts (Exhibit F), pp. 39-41.

6.     If it were the corporation, approximately $6-7 million in additional taxes would be due. Rodney deposition excerpts (Exhibit F), p. 39.

7.     The parties agreed after extensive negotiations that as part of the consideration paid by Maplewood, Maplewood would be liable for an agreed upon amount of additional taxes if there were an IRS audit which determined that the Estate was not the correct seller or that taxes were due as a result of a distribution from B&H. See Exhibit C;  Crisafi deposition excerpts (Exhibit E), pp. 33-34, 56.

8.     Both the amount of Maplewood's potential contribution and the duration of its obligation subject to extensive negotiations.  Maplewood advocated for a 3 year duration but ultimately acceded to the Estate demand for a 6 year period. Annexed as Exhibit C are certain communications reflecting the negotiations. See also Crisafi deposition excerpts (Exhibit E), pp. 33-34, 56; Rodney deposition excerpts (Exhibit F), pp. 189-190.

9.     The parties further agreed to an aggregate $5 million potential contribution from Maplewood.

2

10.     A Tax Contribution Agreement ("TCA") reflecting the foregoing was  drafted by Frank Crisafi, a member of the law firm representing Maplewood.  Exhibit D.

11.     $4 million of the Maplewood obligation was placed in escrow and $1 million was a commitment to be paid after other contributions under the agreement were exhausted.

12.     Maplewood had no obligation for additional tax assessments except for taxes resulting from the determination that the seller was not properly reported or if the estate were found to owe taxes as a result of a distribution of the property from B & H to the estate (TCA, section 1).

13.     One of the provisions of the TCA (section 3) was that the fiduciary return which was to be filed by the Estate for the year of the sale had to be provided to Maplewood 15 days in advance.

14.     Frank Crisafi, Maplewood's counsel and the person who negotiated and drafted the TCA, testified that the purpose of the advance review was solely to ensure that the seller was properly reported and there were no notes on the return which might call that into question. Maplewood was not responsible for other taxes and had no interest in the computation of taxes for the return as long as the Estate was shown as the seller.  Crisafi deposition excerpts, Exhibit E, pp. 33-35.

15.     Although Crisafi believed that the agreement allowed Maplewood to compel modification if it disagreed with the return's designation of the seller, he acknowledged that there was no explicit provision in the agreement he drafted which provided Maplewood with that right Crisafi deposition excerpts (Exhibit E), pp. 57-58.

.

3

16.     However, the TCA provided that the failure to provide the returns to Maplewood 15 days in advance would be as a material breach of the agreement (section 7) and further provided that for any material breach, including the failure to provide the return 15 days in advance, Maplewood was able to terminate the agreement and secure a return of the escrowed funds (section 7).

17.     The TCA was signed by Leonard Rodney ("Rodney") as attorney in fact.

18.     Rodney was the attorney for the Estate for the sale and in general and is a third party defendant herein.

19.     Rodney's retainer provided that his duties included the sale of the real property, administration of the estate and filing of tax returns. Rodney deposition excerpts (Exhibit F), pp. 163-168.

20.     Rodney testified that at no time did he advise Mala Sendyk, the administrator at the time, of these conditions, consult with her regarding the negotiations or advise her of the clause after the closing. Rodney deposition excerpts (Exhibit F), pp. 126-128.

21.     Although Rodney sent a copy of the closing documents to Sharon Sendyk's counsel, Anita Cohen ("Cohen") after the sale,  he never told Cohen or Sharon Sendyk of this clause.

22.     Subsequent to the sale, Sharon Sendyk commenced a proceeding to remove Mala Sendyk as administrator and for an accounting. By decision dated June 28, 2016, the Surrogate removed  Mala Sendyk as administrator. The decree appointing Sharon Sendyk was dated August 2, 2016 and letters issued dated August 7, 2016. in or about August 2, 2016 (Exhibit A).  The accounting proceeding remains pending.

4

23.     Mala Sendyk continued to write estate checks to Rodney and Gallus after she was removed as administrator.  Annexed as Exhibit H are checks written by her including an Estate check for $10,000 dated July 4, 2016, sent by Rodney to Gallus in late July, 2016 and cashed by Gallus August 10, 2016 and a check to Rodney dated July 4, 2016 for $1,777.50, posted July 22, 2016.

24.     There was an acrimonious relationship between Anita Cohen, counsel for Sharon Sendyk, and Leonard Rodney.  Annexed as Exhibit G is an email from Rodney acknowledging the poor relationship.

25.     As a result, Rodney's communications with Cohen were primarily by email. Rodney deposition excerpts (Exhibit F), p. 157.

26.     Rodney billed the estate for services in connection with the sale of the real property, administration of the estate and tax consequences of the sale.  Rodney deposition excerpts (Exhibit F), pp. 165-167.

27.     Rodney did not advise Sharon Sendyk or Anita Cohen of any open estate obligations at the time Sharon Sendyk took over, including the TCA clause requiring returns to be provided 15 days in advance. Rodney deposition excerpts (Exhibit F), pp. 150, 163-166.

28     Rodney did not believe that as outgoing attorney for the Estate, he had any obligation to do so. Rodney deposition excerpts (Exhibit F), pp. 150, 163-166.

29.     In Rodney's words,

 She had the agreement. Once she took over, as the attorney for the administrator, it was her obligation to read the agreement and know what it provided. (Exhibit F, p. 150).

30.     On July 26th, Rodney contacted Cohen and advised her that third party defendant

5

Larry Gallus ("Gallus") was the accountant for the Estate.

31.     Rodney stated that Gallus was in the process of completing the fiduciary return covering the period of the sale and represented that he would do so in compliance with the TCA. Exhibit J.

32.     As such, he asked if Sharon Sendyk wanted Gallus to continue.

33.     Sharon Sendyk agreed.

34.     Rodney had communications with Rick Miller, another attorney at Bryan Cave representing Maplewood, on July 27, 2016, in which they discussed the need to get Bryan Cave the returns in advance and Miller advised Rodney to deal with Frank Crisafi (Exhibit I).

35.     Rodney did not advise Miller that there was a new administrator or that in Rodney's mind, he was no longer representing the Estate.

36.     Rodney did not advise Cohen that she should coordinate with Crisafi.

37.     Rodney had interactions with Crisafi thereafter on behalf of the Estate and never advised him that, according to Rodney, he was no longer representing the estate or that there was a new administrator who had counsel.

38.     Rodney did not copy Cohen on the communications with Crisafi and Gallus in which he acknowledged the need to provide returns to Maplewood in advance. Exhibits K and N.

39.     Rodney acted as the point person for Gallus for much of this period.

40.     The return was initially due by September 30, 2016 and Cohen's efforts to ensure completion went through Rodney.

41.     There were significant delays in Gallus' preparation of the return requiring an extension to March 15[th.]

42.     The extension was prepared by Gallus and sent to Rodney who advised Gallus of his belief that the TCA, which Gallus had a copy of, required Maplewood review in advance. Exhibit N.

43.     Rodney instructed Gallus to send it to Crisafi for approval. Exhibit O.

44.     Cohen and Sharon Sendyk were not included in these communications.

45.     The estimated liability on the extensions were first shown as $2 million for federal taxes and $1 million for State and local taxes. However, after Crisafi pointed out that the projected tax had been no greater than $2.5 million, the estimated taxes paid were proportionateley reduced. Cohen was also not included in these communications. Exhibit P.

46.     Gallus and Rodney continued to communicate regarding the return, each blaming the other for the delays.

47.     While this was happening, Cohen advised them that Sharon Sendyk's accountant, Mark Gottlieb, wanted to review the return and backup in advance.  Exhibit Q.

48.     Although she was unaware of the advanced notice clause, Cohen still repeatedly pressed Gallus for completion in sufficient time for review by Sharon Sendyk's accountant.

49.      Gallus promised to do so by February 20th but failed to do so. Exhibit R

50.     With a March 15th due date, the returns would have had to be provided to Maplewood's counsel by March 1st.

51.     Gallus had the TCA but supposedly could not recall if he reviewed it despite Rodney's instruction to do so.

52. Gallus did know the returns had to be provided to Maplewood in advance.

53. At one point, Gallus testified he was aware of the 15 day deadline although he later

said he only knew the return had to be provided some time in advance (Exhibit S, Gallus Deposition excerpts, pp. 57-58, 60-61).

54.     Crisafi was aware of the deadline.

55.     There were internal discussions with Maplewood and counsel as early as August 16, 2016 and then on March 1, 2017, the deadline for providing the returns.

56.     No one inquired of the Estate or alerted the Estate to the obligation. Exhibit T, Crisafi deposition excerpts, Exhibit E, pp. 51-54.

57.     On March 14, 2017, prior to the filing, Cohen received an email from Gottlieb, asking her to advise Gallus to provide the draft to Gottlieb with backup for review before it was filed and to get an extension as there was not enough time to do so before the due date.

58.     Cohen forwarded the email to Gallus. Exhibit S, Gallus Deposition excerpts, pp. 95-95, 133-134; Exhibit U.

59.     However instead of delaying the filing or discussing the issue (Gallus claims that a further extension was not available but the return could be delayed with an expense for penalties and interest), Gallus forwarded the return to Crisafi on March 14th and then filed it the same day. Exhibits V, X, (Gallus Deposition Excerpts, Exhibit S, pp.141-142).

60.     The filing on the 14th was a day before the return was due.

61.     An efiling authorization was required to be signed by Sharon Sendyk in order to file.

62.     Gallus admittedly forged Sharon Sendyk's signature on the e-filing authorization form. Exhibit W, Gallus Deposition Excerpts, Exhibit S, pp.140-141).

63.     There were no issues with the return from Maplewood's perspective. Crisafi

deposition excerpts, Exhibit E, pp. 51-54.

64.    There have been no notices from the IRS or NYS. Crisafi deposition excerpts,

Exhibit E, pp. 51-54.

65.    Nevertheless, based on the language of the contract, Maplewood declared the

failure to provide the return 15 days in advance to be a material breach and has demanded release

of the funds.

Dated: New York, New York
        July10, 2020

                                         ANITA COHEN, ESQ.
                                         RICHARD L. HERZFELD, P.C.
                                         Of Counsel


                                         _Richard L. Herzfeld_
                                         Attorneys for Defendant Mala Sendyk
                                         112 Madison Avenue
                                         8th Floor
                                         New York, N.Y.  10016
                                         (212) 818-9019

                                         Rherzfeld@herzfeldlaw.com