UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
MAPLEWOOD AT UPPER EAST SIDE, LLC

                         Plaintiff,           Case No: 1:17-CV-02914-DAB

v.

MALA SENDYK, as Administrator of THE ESTATE OF
BENJAMIN SENDYK, SHARON SENDYK, as Administrator
Of the ESTATE OF BENJAMIN SENDYK, and CHICAGO
TITLE INSURANCE COMPANY, as Escrow agent/stakeholder,
INTERIORS BY B&H, INC. and 1808 2nd REALTY, LLC,

                        Defendants.

**STATEMENT OF THIRD PARTY DEFENDANT LEONARD RODNEY PURSUANT TO RULE 56.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE OF DISPUTED MATERIAL FACTS**

AND

SHARON SENDYK AS ADMINISTRATOR OF
THE ESTATE OF BENJAMIN SENDYK,

                     Third Party Plaintiff,

Filed Electronically

v.

LEONARD RODNEY, ESQ. and LARRY GALLUS, CPA.

                     Third Party Defendants.
-----------------------------------------------------------------------------X

       Third Party Defendant Leonard Rodney ("Rodney"), submits this Statement Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure of Disputed Material Facts in opposition to Third Party Plaintiff Sharon Sendyk's motion for summary judgment.

**Agreed Background Facts**

       1.     The litigation stems from documents executed in connection with the sale of the real property located at 1808 2d Avenue, New York, NY (the "Property") by the Estate of Benjamin Sendyk to plaintiff Maplewood at Upper East Side, LLC ("Maplewood") on April 24, 2015 and in particular, a Tax Contribution Agreement ("TCA") and an Escrow Agreement.

2. At the time of the sale, the parties anticipated that the Estate would recognize a gain as a result of the sale of the Property, which gain would subject it to U.S. federal, state and local income taxes in an amount which the parties did not expect to exceed $2,000,000.

3. The parties, however, anticipated that there was a possibility that the Internal Revenue Service or a state or local taxing authority might impose additional taxes on the Estate's gain from the sale of the Property based on the prior disposition of the Property by Interiors by B&H, Inc.

4. The parties negotiated and reached an agreement whereby the buyers would contribute certain amounts in payment of additional potential tax liabilities. Pursuant to the TCA, the Estate agreed to contribute $2,500,000, Maplewood agreed to contribute $4,000,000 and potentially an additional $1,000,000 and 1808 Realty agreed to contribute $1,500,000 The TCA required that the Estate deposit $2,500,000 in cash and Maplewood deposit $4,000,000 in cash into escrow to secure their potential obligations to contribute to any income tax due as a result of the sale of the Property. The Estate, Maplewood and Chicago Title entered into the Escrow Agreement the same date as the TCA with respect to said cash deposits.

5. Due to the fact that the manner in which the Estate reported the sale on its tax returns could greatly affect Maplewood's obligations under the TCA, it was important to Maplewood that the Estate report its taxes in a manner consistent with the agreed to structure of the sale reflecting that the seller of the Property was the Estate. As a result, Maplewood wanted to review the Estate's tax returns before their filing to confirm two things (i) that the Estate was reported as the Seller; and (ii) that the returns did not contain any statements or explanations relating to the ownership of the Property that could affect Maplewood's obligations under the TCA.

6. In light of this concern, the parties agreed in the TCA that the Estate would provide Maplewood with the tax returns reporting the income tax consequences of the sale of the Property at least fifteen (15) days prior to the earlier of (i) the date on which the Estate intended to file the returns; or (ii) the date on which the returns were required to be filed.

7. The TCA also provided that the failure of the Estate to provide the tax returns less than fifteen (15) days prior to filing was a "material breach" of the TCA, causing the TCA to terminate and to be of no further force and effect.

8. Following the closing of the sale of the Property on April 24, 2015, copies of the Closing Memorandum and all relevant documents were forwarded to Anita Cohen, Esq. ("Ms. Cohen"), who was representing Sharon Sendyk in the Surrogate's Court proceedings. The documents sent to Ms. Cohen included copies of the TCA and Escrow Agreement.

9. More than a year after the sale of the Property on April 15, 2016, Surrogate Diana A. Johnson rendered a decision revoking Mala Sendyk's Letters of Administration and appointed Sharon Sendyk to replace her. A decree revoking Mala's Letters of Administration was entered thereafter on August 2, 2016 and Letters were issued to Sharon Sendyk on August 7, 2016.

**Disputed Facts**

10. After August 7, 2016, neither Mala Sendyk nor Rodney had any authority to act on behalf of the Estate. As of that date, by operation of law, Mala Sendyk and Rodney became <u>functis officio</u> (Rodney Decl. at ¶ 14).

11. As of August 7, 2016, the obligation to monitor and comply with the TCA belonged to the new Administrator, Sharon Sendyk, her attorney Ms. Cohen, and third party defendant Larry Gallus ("Gallus") the accountant for the Estate.

12. Following Mala Sendyk's removal as administrator and Rodney's removal as the attorney, Rodney no longer rendered any services to the Estate and only rendered services to Mala Sendyk, individually, in connection with her rendering an accounting in the Surrogate's Court proceedings (Rodney Decl. at ¶ 15).

13. Rodney did not render any bills to the Estate for services rendered after Mala Sendyk's removal as administrator.

14. As of August 7, 2016, it was incumbent upon Ms. Cohen to advise Maplewood that her client, Sharon Sendyk, was the new administrator and that she was representing Sharon Sendyk in such capacity (Rodney Decl. at ¶ 15).

15. Upon being removed as the attorney for the Estate, on July 26, 2016 Rodney reached out to Ms. Cohen by email to inquire as to whether she and her client on behalf of the Estate, wanted Gallus to continue to handle the preparation and filing of the Estate's tax returns. (Ex. J to Herzfeld Declaration). Rodney's email to Ms. Cohen stated in pertinent part as follows:

> "With respect to the preparation of the tax returns for 2015…
> our accountant is working on them and is doing so in
> accordance with the strict requirements of the Tax Contribution
> Agreement which was entered into with the purchase of 1808 2d
> Avenue. In light of the Surrogate's decision, do you want him to
> continue with his work?..."

16. In light of the July 26, 2016 email, in addition to having been provided with a copy of the TCA in August 2015, as of July 26, 2016, Ms. Cohen and her client were alerted to the fact that the TCA contained certain "strict requirements". (Rodney Decl. at ¶ 17).

17. Following the closing of the sale of the Property, Rodney began a dialogue with Gallus in which they discussed the preparation and filing of the Estate tax returns which, among other transactions, would reflect and report the gain from the sale of the Property. In such discussions, Rodney explained to Gallus how the parties had agreed on how to treat the sale on the Estate tax

returns and that the parties understanding was embodied in the TCA. Gallus asked for and was provided with a copy of the TCA (Rodney Decl. at ¶ 18; Exhibit M to Herzfeld Declaration).

18. As of December 2, 2015, at the latest, Gallus was aware of the TCA, had discussed its terms with Rodney and was provided with a copy of the TCA to review. As a professional with over thirty years of experience preparing estate tax returns, after asking for and then being provided with a copy of the TCA, it was more than reasonable for Rodney to assume that he took the time to read it. Gallus did not ask Rodney for an explanation of the TCA and did not ask any questions concerning its terms and conditions (Rodney Decl. at ¶ 18).

19. On September 27, 2016, Gallus erroneously sent Rodney the extensions and payment instructions for the taxes due on the sale of the Property and indicated that they had to be postmarked by October 27, 2016. Rodney, responded by email to Gallus and advised him as follows:

> "Larry,
> Please check the Tax Contribution Agreement, I believe you may be obligated to run this by the attorney for the buyer before filing. (emphasis added).
> Len" (Exhibit O to Herzfeld Declaration)

20. Thus, even though Rodney was not obligated to monitor compliance with the TCA, and could assume that Gallus had read the TCA, Rodney specifically referred him to the TCA to determine his responsibility to confer with Maplewood's attorneys prior to the filing of the extensions. It was Gallus' responsibility to review the TCA to determine his duties and responsibilities. If he had any questions after reviewing the TCA, he could have reached out to Ms. Cohen or Rodney to ask for an explanation. If Gallus elected not to read the TCA, either when it was first sent it to him on December 9, 2015 or again on September 27, 2016, the responsibility falls on him. If Gallus bothered to read the TCA, as one would expect of someone who has "over thirty

years in preparation of tax returns, including estate tax returns such as the one at issue in this action", he had more than 15 days to confer with Maplewood's attorneys and to provide them with copies of the extensions. Moreover, and even more importantly, Gallus would have known that he was obligated to provide the actual proposed returns to Maplewood's attorneys at least 15 days prior to the filing on March 15, 2017. (Rodney Decl. at ¶ 20).

21. Sharon Sendyk's moving papers do not include a declaration or affidavit from Ms. Cohen nor do they contain any form of expert testimony. The reasoning behind the decision not to include a submission from Ms. Cohen is due to the fact that an affidavit from Ms. Cohen would have to include admissions that (i) she either did not read the TCA or if she read it, she did not understand it; (ii) as of July 26, 2016, she was made her aware that the TCA had certain "strict requirements" with respect to the tax returns; (iii) she never asked a single question about the rights and obligations of the parties under the TCA; and (iv) she never advised her client, Sharon Sendyk, as to the existence of the TCA, or any of its provisions. (Rodney Decl. at ¶ 21).

22. Rodney did not advise his client, Mala Sendyk, of the 15 day requirement due to the fact that Mala was in her eighties and would not have understood the complex and complicated provisions of the TCA. (Rodney Decl. at ¶ 23).

23. Rodney did advise his client generally as to the terms and conditions of the TCA and that the buyer would be contributing millions of dollars towards potential tax liabilities. Further, the fact that Rodney did not advise his client as to requirements of the TCA cannot be asserted by Sharon Sendyk since Rodney's client was Mala Sendyk and not Sharon Sendyk. (Rodney Decl. at ¶ 23(i)).

24. There was a lack of privity between Rodney and Sharon Sendyk.

25. Rodney had provided Ms. Cohen with a copy of the TCA in August, 2015 and on July 26, 2016, he alerted her to the fact that the TCA contained "strict requirements". As the attorney for the

Estate, it was Ms. Cohen's obligation to read the TCA and then monitor and take all necessary steps to insure compliance with its requirements. As a practicing attorney with more than 13 years of experience as of 2016, it was more than reasonable for Rodney to assume that she had read and understood the TCA (since she never asked a question). (Rodney Decl. at ¶ 23(ii).

26. In light of Rodney alerting Cohen to the fact that the TCA had "strict requirements" it appears that in breach of her duties to the Estate, Ms. Cohen never bothered to read the TCA, never advised Sharon Sendyk of its existence and instead, elected to sue Rodney and Gallus for malpractice knowing full well that any malpractice was committed by her and by extension, her client, Sharon Sendyk.

27. It was reasonable for Rodney to advise Cohen that Gallus would prepare the returns in compliance with the TCA since Gallus was an experienced accountant, having been practicing for over 30 years and Rodney had discussed the terms of the TCA with Gallus in December, 2015. (Rodney Decl. ¶ 23 (ii)).

Dated: Mineola, New York
　　　　July 30, 2020

　　　　　　　　　　　　　　　　　　　　THE LAW OFFICES OF LEONARD RODNEY
　　　　　　　　　　　　　　　　　　　　*Attorney for Defendant Mala Sendyk and*
　　　　　　　　　　　　　　　　　　　　*Third Party Defendant Leonard Rodney*

　　　　　　　　　　　　　　　　　　　　By: _/s/ Leonard Rodney_
　　　　　　　　　　　　　　　　　　　　Leonard Rodney
　　　　　　　　　　　　　　　　　　　　1565 Franklin Avenue
　　　　　　　　　　　　　　　　　　　　Mineola, NY 11501
　　　　　　　　　　　　　　　　　　　　(516) 498-1717
　　　　　　　　　　　　　　　　　　　　lr80lawyer@aol.com